John A. Maher
LAW OFFICES OF JOHN A. MAHER
450 Springfield Avenue
Summit, NJ 0790
908-277-2444

Thomas A. Brown II
ORANS, ELSEN & LUPERT LLP
875 Third Avenue
New York, New York 10022
212-586-2211

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------- X
AMCOR INC., :
 :
   Plaintiff, :
 :
 : Case No.
 -against- :
 : **COMPLAINT AND**
 : **DEMAND FOR JURY TRIAL**
TEXAS INSTRUMENTS, INC., :
SENSATA TECHNOLOGIES, INC., :
and LEVITON MANUFACTURING, INC., :
 :
   Defendants. :
 :
-------------------------------------------------------X

## PRELIMINARY STATEMENT

  1. Plaintiff Amcor, Inc. ("Amcor") is a rapidly growing company that distributes and sells products, including air conditioners, through various retail outlets throughout the United States. During the spring and summer of 2006, it was in the midst of its most successful year ever when its reputation was severely damaged and its operations were ground to a halt because of defendants' conduct. The principal place of business of Plaintiff Amcor, Inc. is at 685-A Gotham Parkway, Carlstadt, New Jersey, 07072. Upon information and belief, the principal place of business of Defendant Texas Instruments, Inc. is at 12500 TI Boulevard, Dallas, Texas,

75243. Upon information and belief, the principal place of business of Defendant Sensata Technologies, Inc. is at 529 Pleasant Street, Attleboro, Massachusetts, 02703. Upon information and belief, the principal place of business of Defendant Leviton Manufacturing, Inc. is at 59-25 Little Neck Pkwy., Little Neck, New York, 11362.

2. As a direct result of defendants' negligent and tortious conduct, thousands of Amcor air conditioners simply stopped working for no apparent reason in the midst of a record heat wave, leading customers and retailers to return thousands of units, inundate Amcor with complaints, harshly question Amcor's quality and refuse to purchase untold thousands of further units. After weeks of frantic effort and hundreds of man hours seeking to identify and fix the problems, Amcor learned that the air conditioners were improperly shutting down because of a defective plug designed and licensed by defendants.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) in that there is diversity of citizenship.

5. Venue in the District of New Jersey is proper under 28 U.S.C. § 1391(a)(1) in that all defendants reside in the District of New Jersey because all are subject to personally jurisdiction in this State.

## THE PARTIES

6. Plaintiff Amcor Inc. is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business in Carlstadt, New Jersey.

7. Upon information and belief, Defendant Texas Instruments, Inc. ("Texas Instruments") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Dallas, Texas. Upon information and belief, it conducts sufficient business in New Jersey to be found to be domiciled in this state.

8. Upon information and belief, Defendant Sensata Technologies, Inc. ("Sensata") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Attleboro, Massachusetts. Upon information and belief, it conducts sufficient business in New Jersey to be found to be domiciled in this state.

9. Upon information and belief, Defendant Leviton Manufacturing, Inc. ("Levition") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Little Neck, New York. Upon information and belief, it conducts sufficient business in New Jersey to be found to be domiciled in this state.

**FACTS**

10. Amcor is a growing distributor of air conditioners that competes against more established brands throughout the United States. As such, it endeavors to acquire and distribute products of the highest quality that meet the most stringent safety standards. To that end, the cutting edge products that it distributes comply with the stringent safety standards of the National Electrical Code (NEC), a set of standards for electrical installations published by the National Fire Protection Association that have been adopted as law by many states. Amcor further uses parts that are certified as safe by the Underwriters Laboratory (UL), an independent, not-for-profit product-safety testing and certification organization headquartered in Northbrook, Illinois. Amcor submits its air conditioning units for UL certification.

11. Amcor's reputation for quality and the excellence of its products are critical to its continued growth and expansion.

12. Section 440.65 of the 2002 NEC requires all room air conditioners sold in the United States after August 1, 2004, to have cords with either arc-fault circuit interrupter (AFCI) or leakage current detection and interruption (LCDI) technology. Both types of plug are intended to detect dangerous electrical arcs that are likely to cause a fire and to shut down the air conditioning unit when such arcs occur.

13. Because Amcor was selling air conditioners throughout the United States, it needed to comply with these requirements. Amcor, therefore, selected an AFCI plug for use on approximately two thirds of its air conditioners that were to be sold in the United States during 2006. The AFCI plug Amcor selected utilized technology developed and marketed by a division of Texas Instruments. Upon information and belief that division is now owned by Sensata Technologies, Inc. The plug that had been developed and marketed by Texas Instruments was further marketed, manufactured and then distributed by Leviton, both directly and through subsidiaries. Defendants emphasized the fact that the plug's technology had been developed by Texas Instruments in marketing the plug by, among other things, placing stickers with the Texas Instruments logo on plugs manufactured and sold by Leviton and its subsidiaries.

14. The AFCI plug selected by Amcor was represented by the defendants to be suitable for air conditioners and to comply with the NEC requirements that governed plugs placed on air conditioners to be sold in the United States.

15. Specifically, upon information and belief Texas Instruments represented that "[t]hese are arc-fault circuit interrupters (AFCI) that are intended to be connected to cords of air-conditioners to provide protection to the power supply cord connected to it against the unwanted

4

effects of arcing." These representations were incorporated in a report issued by UL on June 9, 2004. Upon information and belief, Texas Instruments made these statements to UL as part o fits effort to obtain UL certification and Texas Instruments intended that the statements be relied on by air conditioner manufacturers and distributors such as Amcor in selecting this Texas Instruments plug for inclusion in air conditioners to be sold in the United States. At the least, it was certainly foreseeable that companies such as Amcor would rely on these representations when considering whether to utilize this Texas Instrument's plug that was manufactured and distributed by Leviton.

16. All of the defendants failed to disclose that this plug was not suitable for use on air conditioners because the plug would in fact regularly and improperly shut off the air conditioners when they were used in many home environments under normal and foreseeable operating conditions. Upon information and belief, all of the defendants were aware or should have been aware that these AFCI plugs would effectively render many otherwise properly functioning air conditioners inoperable.

17. In reliance on the representations that this AFCI plug was suitable for use on air conditioners to be sold in the United States, representatives of Amcor approved the Texas Instruments plug for inclusion on the Amcor air conditioners.

18. Amcor sold about 40,000 air conditioners with defendants' AFCI plugs, including about 10,000 sold through the QVC television shopping channel on June 25, 2006 alone.

19. At the time Amcor selected the Texas Instruments plug, it was unaware that the plug would improperly shut down otherwise functioning air conditioners. Amcor only learned that many of its air conditioners were inexplicably shutting off in the middle of a heat wave when thousands of its customers began to experience problems while using the air conditioners.

5

The customer complaints indicated that the air conditioners would simply shut down repeatedly for no apparent reason, in some cases dozens of times an hour, rendering the air conditioners essentially unusable.

20. The volume of complaints was so high and Amcor's phone system was so swamped by the calls that virtually every Amcor employee was forced to deal with the complaints for days and weeks, making it impossible for normal operations to continue.

21. Initially, the source of the problem was not readily apparent. Amcor therefore hired a special consultant at great expense to identify the problem. Amcor also contacted Texas Instruments and Leviton and described the problem to them. Rather than acknowledging the plug's deficiencies or admitting that the plug was defective, both Texas Instruments and Leviton claimed that the plug operated properly and that problem must lie elsewhere in the air conditioner. These statements were untrue when made and upon information and belief both Texas Instruments and Leviton knew that these statements were untrue when made. After expensive investigation and repeated testing, Amcor determined that the air conditioners were shutting down improperly solely because the plug was defective.

22. The refusal by Texas Instruments and Leviton to acknowledge the problems with the plug they had designed, marketed and sold delayed Amcor in its efforts to identify the source of the problem and served to increase the damage to Amcor caused by the defective plug.

23. After identifying the plug as the source of the problem, Amcor, in consultation with its retained expert, designed a filter for the plugs that it believed would cause the air conditioners to function properly. At further cost and expense, it designed, manufactured and shipped this filter to thousands of customers. Unfortunately, over time the filter apparently stopped working because, on information and belief, the technology in the plug began

6

recognizing or disregarding the filter. As a result, the attempted fix failed and the air conditioners continued to improperly shutoff rendering them useless.

24. In a further attempt to correct the problem, Amcor shipped replacement units to many customers who were experiencing problems, but these units too failed to work, again because of the plugs.

25. Amcor selected an LCDI plug for use on about one third of the air conditioners is distributed in the United States. These air conditioners, which were otherwise identical to those with defendants' AFCI plug, experienced none of the problems

26. The defective plug designed, marketed and sold by defendants damaged Amcor in many ways, including, but not limited to, lost profits, remediation expenses and damage to its reputation with customers and retailers. These damages were a direct and proximate result of defendants' conduct.

## COUNT ONE

### (Fraud)

27. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

28. Defendants deliberately made material false representations and omissions that they knew and intended would be relied upon by companies such as Amcor.

29. Amcor justifiably relied on Defendants' statements in deciding to use Defendants' plugs in its air conditioners.

30. Absent these statements, Amcor would not have used Defendants' plugs.

31. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

7

## COUNT TWO

### (Negligent Misrepresentation)

32. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 26 and 28 through 31 as though fully set forth herein.

33. Defendants negligently made material false representations and omissions that they knew and intended would be relied upon by companies such as Amcor.

34. Amcor justifiably relied on Defendants' statements in deciding to use Defendants' plugs in its air conditioners.

35. Absent these statements, Amcor would not have used Defendants' plugs.

36. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

WHEREFORE, Plaintiffs request Judgment in their favor and against Defendant as follows:

    A. For compensatory damages in an amount in excess of $3 million, the exact amount to be proven at trial;

    B. For punitive damages;

    C. For pre- and post-judgment interest as permitted by law;

    D. For the costs and legal expenses incurred in this suit;

    E. For all remedies permitted by the various claims asserted; and

    F. For such other and further relief as the Court deems just and appropriate.

Dated: January 17, 2007

                                            LAW OFFICES OF JOHN A. MAHER

                                            By: s/ John A. Maher
                                                 John A. Maher
                                            450 Springfield Avenue
                                            Summit, NJ  07901
                                            908-277-2444

                                            ORANS, ELSEN & LUPERT LLP
                                            Thomas A. Brown II
                                            875 Third Avenue
                                            New York, New York  10022
                                            (212) 586-2211

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO RULE 7.1

Amcor Inc. hereby declares that a wholly-owned subsidiary of Amcor Ltd., a UK registered private company. No publicly traded parent company is holding directly or in directly 10% or more of Amcor Inc shares. Amcor Inc doesn't hold any shares of any other subsidiary.

A supplemental disclosure statement will be filed upon any change in the information provided herein.

Dated: January 17, 2007

                                                LAW OFFICES OF JOHN A. MAHER

                                                By: /s/ John A. Maher
                                                    John A. Maher
                                              450 Springfield Avenue
                                              Summit, NJ 07901
                                              908-277-2444

                                              ORANS, ELSEN & LUPERT LLP
                                              Thomas A. Brown II
                                              875 Third Avenue
                                              New York, New York 10022
                                              (212) 586-2211